Good morning, Your Honors, and may it please the Court, James Chavez on behalf of Mr. Hernandez. I'd like to reserve a couple of minutes for rebuttal. I had planned to focus the majority of my comments today on the first issue that I briefed, which is whether or not the District Court properly denied the motion for new counsel below. And I would just like to read a short quote from the United States v. Moussa, 220 F. 3rd, 1096. It is settled that a District Court may not deny a substitution motion simply because the Court thinks current counsel's representation is adequate. Even if a defendant's counsel is competent, a serious breakdown in communication can result in an inadequate defense. Where is the evidence that there was a serious breakdown in the attorney-client relationship? I think that the record makes clear that there was a breakdown in communication, and I also think that the record's a little bit stunted by the district judge focusing on the wrong issues and not focusing on the issues that were brought up by Mr. Hernandez and his counsel. Both counsel and Mr. Hernandez told the district judge that there was communication issues with regards to the law in his case, and also that they were having conflict. And these two issues, the judge really didn't delve into. The judge didn't ask counsel what were the legal issues they were having problems with, and the judge didn't ask counsel what the nature of the conflict was before the two of them. And counsel was rather candid that in the course of her representation, she had maybe done some things that would cause Mr. Hernandez to mistrust her, in that another attorney was sent to see him when he was forced to make the decision as to whether or not he was going to waive his right to have his case presented to the grand jury, such that when trial counsel below went to see him with the plea agreement, Mr. Hernandez at that point didn't even know who his attorney was. And so I think it's reasonable if you're sitting in jail for weeks, for months, and you don't know who your counsel is. Somebody walks in, says, sign this paper for a few years in jail. You're going to have some hesitations when you don't even know if this person is your attorney. And additionally, Mr. Hernandez told the court that he had called his attorney many times and that she had not been able to answer the phone, which, having practiced in the Southern District, is completely reasonable. We're handling 40, 50 cases at a time. You're not in your office that often. But for an individual who doesn't know who his attorney is, who's making phone calls from the jail, it's reasonable to think, to understand why he might mistrust the individual that is coming. But when you say he doesn't know who she is, I mean, he had been told that. How does he telephone her if he doesn't know who she is? Well, he had seen two different attorneys had come to visit him in jail at that point. When the phone calls happened, relative- Well, who was he telephoning? Who was he telephoning? He was telephoning the Federal Defender's Office in San Diego, and they would have on record who his attorney was. And hasn't he already contacted one of them? He probably came to court one day, saw one of the attorneys. We know that when he waived indictment, he saw a second attorney. And then when someone went to present him with a plea agreement, it was a third attorney. So he had seen a number of attorneys. The third attorney, the person now he's complaining about? I'm sorry? The person he's now complaining about, the one who went to see him? Yes, with the plea agreement. Why was he unable to articulate his problem with her? I just don't get it. Well, I think that this Court has made clear that it's the duty of the district judge to ask specific questions of the defendant for why there was a conflict. And I don't think that that was done. Instead, what the district judge here did was repeatedly call the client stubborn, obstinate, things like this, emphasizing that he didn't want to accept the amount of time in jail that the government was offering him. And in fact, both trial counsel and Mr. Hernandez says that's not the issue. The issue here is not the amount of time. The issue is that I don't trust my attorney. We're not communicating. And repeatedly, the district judge focused on this other issue of it being about the amount of time in jail. And that just wasn't the issue in this case. At the beginning of the hearing, she says, I think in this particular circumstance, he probably should get a new attorney. Yes. So it differs a lot from instances I can recall when I was a district judge where a defense attorney would come in and say, Judge, we just can't talk. I think that there's no way I can continue to represent this defense. And I definitely noticed that word probably. And when that happens, you know, it's pretty much a slam dunk. She was very careful here to have. When at the end, she says, you know, I think if I recall correctly, at the end she said that she could represent him. No, exactly the opposite, Your Honor. At the very end, after the judge makes his ruling, she says, Your Honor, I'm afraid because of her lack of communication, I do not believe I'm going to be able to represent him at trial. And that's what she says essentially after the judge makes his ruling. And that is on page 65 of the excerpt of records. After the court says he isn't going to win that battle, the trial counsel says, I am concerned that it will create a further conflict between us and that won't be able to have adequate assistance in preparing for trial, to which the district judge responds, shame on him. So even after the district judge has indicated he is not going to give Mr. Hernandez a new attorney, Ms. Pelloquin below is still advocating that the judge reconsider his ruling in light of the fact that she is going to have to represent him in trial and is afraid that she won't be able to do that adequately. She expresses a concern. I mean, after the judge has already indicated what his ruling is going to be. And I think that part of the hesitancy in this issue that you, as a counsel, walk into when you walk into a district judge's courtroom and you know that his practice is not to appoint new attorneys willy-nilly, you know that at the very end of the hearing there's a good chance that you're still going to be stuck with this client. So I think that it would put trial counsel in a very difficult situation here of not, for lack of a better word, selling her client out and creating more conflict during the hearing with sort of an eye that she was, in fact, going to have to represent this defendant all the way through trial. And I think that the court makes very clear and trial counsel makes clear that the judge should prejudge the motion before he came into this case, before he came in there. Did she articulate any basis why she wouldn't be trusted by him? She did. She did. Trial counsel was very candid about the fact. What did she say that indicated? She admitted to the court that when she went to see him with the plea agreement, Mr. Hernandez at that point didn't even know her to be his attorney. That's not a reason for her not to. I mean, if somebody's handing you a piece of paper. No, but you say she thought he really, she couldn't represent him. No, she's not a dummy. She could say something to the court that indicated, I can't represent him because, and what was the because? The because was there was no trust between them. What? That there was no trust, she did, Mr. Hernandez did not trust her, that there was no effective communication. And he does not trust me because? Because halfway through his proceedings in this court, he still didn't even know I was his attorney. Because I didn't take his phone calls. Because somebody else went to see him. And I'd like to reserve the rest of my time to have a minute for rebuttal. Thank you. Question, how much time has he served? He has served, I think, over two years at this point. So he has less than a year remaining. He's likely to serve something like 32 months with time off for good behavior. Yes. And he has no defense really to charge? I guess that would depend on whether the court reached the issue of whether or not the 496 was an aggravated felony. Assuming we disagreed with your argument, he essentially has no defense. So if we remanded and reversed, by the time all of this got done, he would be in the same place. That would be real. I mean, I've negotiated deals on remand with the government that is for less time. So that would be a possibility for him. Good morning, Your Honors. And may it please the Court. Michelle Wasserman on behalf of the United States. The district court's inquiry in this case was adequate, and there was no conflict between defendant and counsel that rose to the level of a vote of no confidence.   And I would like to ask the court to consider this case. First, I would note for this court that the inquiry by the district court in this case spanned 14 pages of transcripts. Within those 14 pages, the district court first spoke to defense counsel, asked her specific questions, then first asked an open-ended question to defendant, and followed up with specific targeted questions meant to elucidate the nature of the purported conflict between defendant and counsel. This inquiry was more than sufficient, and it was sufficient for the court to have an informed basis on which to reach its decision, which is the standard that the Ninth Circuit has propounded. Second, I would note that, as this court noted, there was no conflict here that rose to the level of a violation of this defendant's Sixth Amendment right to counsel. There was not a total lack of communication or a complete breakdown in communication, which is the standard that this court has propounded in other cases. In fact, the reason defense counsel or appellant noted that, stated that Mr. Hernandez told the court there was a lack of communication, but what Mr. Hernandez actually told the court was that he, the defense counsel did not take his phone calls, that he, she didn't come and visit him enough, and that he felt pressure. That, in fact, shows that there was not a complete breakdown in communication, but rather that he wanted to communicate with his attorney more, not less. In fact, the real reason, the real crux of the disagreement here was that defendant wanted to hear from somebody else. And that was what defense counsels told the court. So basically, she wanted to change the messenger, not the message. And had the court granted defendant's motion, we would be in the same situation as we are here. The message would have been the same, which was that he was facing a sentencing enhancement, and he was going to be facing a significant sentence because of it. Therefore, the conflict did not rise to the level of that type of conflict that is a complete breakdown in communication. And finally, I believe the record is clear that this was a case in which the defendant was simply being unreasonable. This Court has said that there must be limits on the ability of a defendant who is being unreasonable to have new counsel. And because the defendant was being unreasonable here, I think the district court properly denied the motion, and this Court should affirm the sentence and conviction. Unless the court has questions on this issue or any other issue, I'm happy to submit. Thank you. Thank you. So you had 23 seconds. Your Honor, I would just emphasize that in a couple of different cases, this Court has reversed when the district judge made clear that it had prejudged the motion. And I think Adelza is one of those cases, as is Daniels v. Warner. What do you mean by prejudging the motion? What do you mean by prejudging it? He's saying I'm not going to grant this motion for new counsel, no matter what I hear in this hearing. He said that? The judge, Ms. Pellequin, trial counsel below says, I know your Honor's practice. That doesn't mean he's prejudged the case. How can you say that? I think that if you look at the facts of the other cases where the Court has concluded it was prejudged, I think that the facts here are very similar. And I think that the strong language that the district judge here used to describe Mr. Hernandez demonstrates his unfriendliness and the fact that he had prejudged this motion before it was heard. And with that, I submit. Thank you, Your Honor. Okay. Thank you. Thank you. United States v. Hernandez-Ortiz is submitted at this time. And we'll hear argument in the next case, which is United States v. Hernandez-Contreras.
judges: Korman, Noonan, Paez